**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| REVIER TECHNOLOGIES, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Case No._____ |
| | ) | |
| | ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| TULANE UNIVERSITY, | ) | |
| TULANE VENTURES GP, LLC, | ) | |
| TULANE INNOVATION FUND I, | ) | |
| L.P., | ) | |
| SUSAN BOURGEOIS, in her official | ) | |
| capacity as Secretary of LOUISANA | ) | |
| ECONOMIC DEVELOPMENT and | ) | |
| President of the LOUISIANA | ) | |
| ECONOMIC DEVELOPMENT | ) | |
| CORP., and the | ) | |
| LOUISIANA ECONOMIC | ) | |
| DEVELOPMENT CORP., | ) | |
| | | |
| *Defendants.* | ) | |

**INTRODUCTION**

1. In *Students for Fair Admissions, Inc. v. President and Fellows of Harvard* ("*SFFA*"), the Supreme Court emphasized a fundamental principle of American law: "Racial discrimination is invidious in all contexts." 600 U.S. 181, 214 (2023).

2. The Court stated that its "acceptance of race-based state action has been rare for a reason." *Id.* at 208. "Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are

founded upon the doctrine of equality. That principle cannot be overridden except in the most extraordinary case." *Id.* at 208 (cleaned up).

3. Three years have passed since *SFFA*. But rather than complying with the Supreme Court's mandate that "race may never be used as a 'negative' and that it may not operate as a stereotype," Tulane University and its affiliated entities, Tulane Ventures GP, LLC, Tulane Innovation Fund I, L.P. (together, the "Tulane Defendants"), along with the Louisiana Economic Development Corporation, continue to discriminate against individuals who are not in one of their preferred racial categories and to deny such individuals opportunities based on their skin color.

4. And they are using federal money to accomplish this discrimination.

5. One target of such discrimination is Matthew Schultheis.

6. Mr. Schultheis is the sole owner of a small Louisiana-based start-up, Revier Technologies, Inc., and is developing an artificial intelligence program for the construction industry.

7. Mr. Schultheis applied for a much-needed small business investment for Revier Technologies from Tulane Ventures at Tulane University.

8. Through the Tulane Venture Seed Fund, Tulane Ventures administers millions in federal funds it receives from the State of Louisiana through the State Small Business Credit Initiative ("SSBCI"). The Louisiana Department of Economic Development works through the Louisiana Economic Development Corporation to administer the SSBCI funds.

9.    In accordance with Tulane's contract with the Louisiana Economic Development Corporation, for non-Tulane affiliated individuals, eligibility for the Fund is restricted to businesses owned by individuals who are considered "socially and economically disadvantaged," which in practice requires that the business be 51% owned and controlled by a female or 51% owned or controlled by a "minority individual," which Tulane defines as American Indian, Alaska Native, Asian American, Black or African American, Native Hawaiian or Other Pacific Islanders, Hispanic or Latino/a, or one of more of these races.

10.    This restriction based on race is not hypothetical. The Tulane Defendants specifically rejected Revier Technologies's application because its owner, Mr. Schultheis, is white.

11.    The Tulane Defendants even put it in writing—directly informing Mr. Schultheis that his company did not qualify for the Fund because he is not a "diverse founder."

12.    Tulane is a private university that receives over $320 million per year in federal funds and is thus subject to the non-discrimination mandate of Title VI. As private entities that receive federal financial assistance, Tulane Ventures GP, LLC, and the Tulane Innovation Fund I, L.P. are also subject to Title VI.

13.    As private entities, the Tulane Defendants are also subject to the Civil Rights Act of 1866 (42 U.S.C. § 1981), which prohibits discrimination on the basis of race in the making and enforcement of contracts.

3

14. The Louisiana Economic Development Corporation ("LEDC") is a public corporation created by the State of Louisiana. As a recipient of federal funds, the LEDC must comply with Title VI. And as a state actor, LEDC must also comply with the Fourteenth Amendment and may not deprive an individual of his constitutional right to equal protection of the laws.

15. By denying Revier Technologies's application to the Fund because its owner, Mr. Schultheis, is the wrong race, the Tulane Defendants engaged in unlawful racial discrimination in violation of Title VI and Section 1981, and the LEDC violated Title VI and the Fourteenth Amendment.

16. Revier Technologies is entitled to relief.

## PARTIES

17. Plaintiff Revier Technologies, Inc., is a Louisiana corporation, with all operations, including its principal place of business, in Thibodaux, Louisiana. Matthew Schultheis is the sole owner of Revier Technologies, Inc.

18. Defendant Tulane University is a private research university in New Orleans, Louisiana. Tulane University receives over $320 million in federal funding per year. In 2023, Tulane University started Tulane Ventures under the Tulane Innovation Institute. Tulane Ventures invests in Tulane University professors, students, alumni, and Louisiana-based entrepreneurs. Tulane University is a limited partner of the Tulane Innovation Fund I, L.P.

19. The Tulane Ventures Seed Fund (the "Fund") is a venture fund for Tulane Ventures and administers federal SSBCI funds it receives from Louisiana

4

through the Louisiana Economic Development Corporation. The legal name of the Fund is Tulane Innovation Fund I, L.P., a Delaware limited partnership.

20.    Tulane Ventures GP, LLC is a Delaware limited liability company and is the general partner of the Tulane Innovation Fund I, L.P.

21.    The Louisiana Economic Development Corporation is a public corporation created by the State of Louisiana. LEDC is a limited partner of the Tulane Innovation Fund I, L.P.

22.    Susan Bourgeois is the Secretary of Louisiana Economic Development and President of the LEDC. She is sued in her official capacity.

## JURISDICTION AND VENUE

23.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

24.    Venue for this action properly lies in this district pursuant 28 U.S.C. §§ 1391(b)(2), (e)(1), because one of Defendants has their headquarters and principal place of business in this judicial district, Plaintiff's headquarters and principal place of business is in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

**Tulane Receives Federal Money Through LEDC**

25.    In 2022, Louisiana entered into an Allocation Agreement with the U.S. Department of Treasury to receive $113 million in SSCBI funds. Louisiana administers these funds through LEDC.

5

26.    In her official capacity as Secretary of Louisiana Economic Development, Susan Bourgeois is President of the LEDC and thus is responsible for LEDC's administration of the SSBCI funds.

27.    Tulane has an agreement with the State of Louisiana to receive SSBCI funds.

28.    Tulane Ventures uses these funds to invest in Tulane University professors, students, alumni, and Louisiana-based entrepreneurs.

29.    The Tulane Defendants administer federal SSBCI funds received from Louisiana through the LEDC. Tulane Ventures GP, LLC is the signatory to an agreement with LEDC to receive SSBCI funds from the State of Louisiana. **Exhibit 1** (Louisiana Seed Capital Funding Agreement – Tulane Ventures GP, LLC).

**Tulane's Fund is a Contract Program**

30.    The Fund makes investments ranging between $25,000 and $250,000 to Louisiana-based start-ups.[1] To apply for an investment from the Fund, applicants must certify that they are, if not affiliated with Tulane or in a particular investment area, neither of which Schultheis is, a "socially and economically disadvantaged individual owned business." **Exhibit 2.**

31.    An applicant must also confirm whether the business is 51% owned and controlled by a female or 51% owned or controlled by a "minority individual," which Tulane defines as American Indian, Alaska Native, Asian American, Black or African

---

[1] https://www.tulaneventures.com/

6

American, Native Hawaiian or Other Pacific Islanders, Hispanic or Latino/a, or one of more of these races. *Id.*

32.    If an application is accepted, the Fund requires execution of a Simple Agreement for Future Equity. This contract states, in relevant part: "THIS CERTIFIES THAT in exchange for the payment by [Investor Name] (the "Investor") of $[_____] (the "Purchase Amount") on or about [Date of Safe], [Company Name], a [State of Incorporation] corporation (the "Company"), issues to the Investor the right to certain shares of the Company's Capital Stock, subject to the terms described below." **Exhibit 3.**

33.    A successful application to the Fund results in between $25,000 and $250,000 in start-up funding, in exchange for a stake in the applicant's company.

34.    As a contract program, the Tulane Defendants must operate the Fund in accordance with Section 1981's prohibition on racial discrimination in contracting.

35.    And as recipients of federal funds, the Tulane Defendants and LEDC must comply with the prohibition on racial discrimination in Title VI.

36.    Bourgeois is the state official responsible for administering federal SSBCI funds received by the State of Louisiana. In doing so, she acts under color of law and must comply with the Fourteenth Amendment's prohibition on state-sponsored racial discrimination in Equal Protection Clause.

**The Tulane Defendants Reject Schultheis Based on Race**

37.    Mr. Schultheis is white. He owns a small software company, Revier Technologies, Inc., located in Thibodaux, Louisiana. He is currently developing an AI application for the construction industry.

38.    At all relevant times, Schultheis has been the majority owner and sole operator of Revier Technologies, and the company has had fewer than 10 employees.

39.    On June 18, 2024, Schultheis applied to the Fund on behalf of Revier Technologies, using the application on the web site, which, among other things, asked, "Are you 51% owned and controlled by minority individual (defined as a natural person who identifies as American Indian or Alaska Native; Asian American; Black or African American; Native Hawaiian or Other Pacific Islander; Hispanic or Latino/a, or one or more)?" Schultheis checked "no" to this question.

40.    On July 3, 2024, Schultheis received an email from Marco Melero, "Venture Capital Analyst," stating:

> Thank you for submitting your intake form to Tulane Venture Fund. Unfortunately, your startup does not align with our current investment criteria and strategy. Your business does not qualify as a SEDI-owned [socially and economically disadvantaged individual], business and is therefore not eligible for SSBCI funding…**Tulane Ventures is prioritizing diverse founders** in Louisiana with tech-enabled companies in health/medical, climate/energy, and AI/technology.

**Exhibit 4** (emphasis added).

41.    When Schultheis asked for clarification, Mr. Melero responded: "We have been tasked with investing our capital into socially and economically

disadvantaged individual owned businesses…per our partnership with the State of Louisiana and are focusing on businesses that meet that criteria."

42. In other words, Schultheis's application was rejected because of his race.

43. Other than the fact that Schultheis is not a "diverse founder," Revier Technologies would be eligible for an investment from the Tulane Defendants and, specifically, from the Fund.

44. Schultheis did not receive an investment from the Fund.

**Rejection Based on Race Injured Revier Technologies**

45. As a result of the Tulane Defendants' blatant racial discrimination, Revier Technologies has been injured in two distinct ways.

46. First, Revier Technologies experienced the injury that results from being denied the opportunity to compete for a contract on equal footing.

47. Second, Revier Technologies incurred financial damages as a result of being denied a critical seed-money investment.

**COUNT I**
**Civil Rights Act of 1866 Violation (42 U.S.C. § 1981)**
**(against the Tulane Defendants)**

48. Plaintiff repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

49. By intentionally discriminating against applicants to the Fund based on race, Tulane University, Tulane Ventures GP, LLC, and the Tulane Innovation Fund I, L.P. are violating 42 U.S.C. § 1981.

9

50. Section 1981 guarantees "[a]ll persons...the same right...to make and enforce contracts...as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

51. This provision "protects the equal right of all persons ... to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 298 (1976) (Section 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."). "Section 1981 generally forbids racial discrimination in the making and enforcement of private contracts . . . whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).

52. A contract "need not already exist." *Domino's Pizza*, 546 U.S. at 475. Section 1981 "protects the would-be contractor along with those who have already made contracts." *Id.* Thus, Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.*

53. The Fund implicates a right protected by section 1981--the right to "make ... contracts." 42 U.S.C. §1981(a). Application for an investment from the program forms a contractual relationship between the Tulane Defendants and the applicant. Indeed, a successful applicant obtains a substantial investment, ranging from $25,000 to $250,000, in exchange for a stake in the applicant's company.

54. The Tulane Defendants explicitly limit formation of this contractual relationship based on race. Proof of a facially discriminatory policy, or even a decisionmaker's expressed desire to avoid contracting with members of a certain race

10

is direct evidence of discriminatory intent. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).

55. Revier Technologies sought to enter into a contract with the Tulane Defendants and, because of his race, was prevented from doing so. *See Domino's*, 546 U.S. at 476.

56. In Tulane's own words, Revier Technologies was rejected from the Fund specifically because Schultheis is not "diverse," i.e., because he is white.

57. By intentionally excluding Revier Technologies from the Fund based on the race of its owner, Mr. Schultheis, the Tulane Defendants are violating Section 1981.

58. Under Section 1981, Revier Technologies is entitled to equitable and legal relief, including compensatory and punitive damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

59. Under 42 U.S.C. § 1988, Revier Technologies is also entitled to attorneys' fees.

**COUNT II**
**Title VI Violation (42 U.S.C. § 2000d)**
**(against the Tulane Defendants and the Louisiana Economic Development Corporation)**

60. Plaintiff repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

61. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

11

62.     Private individuals may sue to enforce Title VI and obtain both injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001).

63.     Tulane University receives over $320 million per year in federal funds and is thus subject to Title VI.

64.     The State of Louisiana receives $113 million in federal SSBCI funds, which it administers through LEDC. As a recipient of federal funds, LEDC is subject to Title VI.

65.     By denying Revier Technologies an investment opportunity on the basis of the race of its owner, the Tulane Defendants and LEDC violated Title VI.

66.     The Tulane Defendants and LEDC, intentionally discriminated against Schultheis as owner of Revier Technologies on the basis of race or ethnicity by specifically denying his application to the Fund because he is not considered "diverse" or "socially and economically disadvantaged," which Defendants construe to be a race-based category.

67.     Revier Technologies has been and will continue to be injured because the Tulane Defendants and LEDC have and will continue to deny Schultheis the opportunity to compete for investment money on equal footing with other applicants on the basis of race or ethnicity due to intentionally discriminatory policies and procedures.

68.     Revier Technologies seeks declaratory and injunctive relief that prohibits the Tulane Defendants and LEDC from unlawfully discriminating on the basis of race by denying investment opportunities to companies based on their

owners' race. Revier Technologies is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, and a permanent injunction.

69.     Revier Technologies further seeks money damages from the Tulane Defendants and LEDC under Title VI, as well as attorneys' fees and costs from all Defendants pursuant to 42 U.S.C. § 1988.

## COUNT III
### Violation of U.S. Const., Amend. XIV
### 42 U.S.C. § 1983
### (Against Susan Bourgeois, in her official capacity as Secretary of LED and President of LEDC)

70.     Revier Technologies repeats and realleges the allegations in the above paragraphs as if fully set forth herein.

71.     42 U.S.C. § 1983 prohibits any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State from subjecting, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

72.     The Fourteenth Amendment provides that no State shall "deny to any person ... the equal protection of the laws." Amdt. XIV, § 1. The Equal Protection Clause represents a "foundation[al] principle"—"the absolute equality of all citizens of the United States politically and civilly before their own laws." SFFA, 600 U.S. at 201 (quoting ong. Globe, 39th Cong., 1st Sess., 431 (1866) (statement of Rep. Bingham) (Cong. Globe)).

13

73. In her official capacity as Secretary of Louisiana Economic Development and President of LEDC, Susan Bourgeois is responsible for administering Louisiana's federal SSBCI funds.

74. Because she is acting under color of state law, she must administer SSBCI funds in accordance with the Fourteenth Amendment.

75. By using race as a factor in determining who is eligible receive Louisiana's SSBCI funds, Bourgeois is depriving individuals of constitutional rights, in violation of 42 U.S.C. § 1983.

76. Bourgeois specifically deprived Matt Schultheis and therefore Revier of their constitutional right to be free from state-sponsored racial discrimination and to equal treatment by the State of Louisiana and LEDC. To deny Revier's eligibility for SSBCI funds, LEDC used Schultheis' race as a negative and as a stereotype, thereby violating the "twin commands" of the Equal Protection Clause. *SFFA*, 600 U.S. at 218.

77. "Diversity" is not an interest that could justify the use of racial preferences under the Fourteenth Amendment and federal civil rights law. *See SFFA*, 600 U.S. at 215-216. No compelling interest justifies the race-based classifications employed by Bourgeois and LEDC in determining eligibility for SSBCI funds.

78. Bourgeois acted under color of law in developing and implementing the race-based eligibility criteria used to deny Revier Technologies equal protection of the laws by discriminating against Schultheis in violation of the Fourteenth Amendment and Section 1983.

79.    Plaintiff is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, and a permanent injunction because there is no plain, adequate, or speedy remedy at law to prevent Bourgeois and LEDC from continuing to use policies and procedures that discriminate on the basis of race or ethnicity in violation of the Fourteenth Amendment and because the harm Plaintiff otherwise continues to suffer is irreparable.

80.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, Revier Technologies respectfully requests that the Court:

A.  Issue a declaratory judgment that the Tulane Defendants are violating 42 U.S.C. § 1981 and Title VI.

B.  Issue a declaratory judgment that Bourgeois, in her official capacity as President of LEDC, is violating Title VI and 42 U.S.C. § 1983.

C.  A permanent injunction barring Defendants from continuing to operate the Tulane Venture Fund with racial eligibility criteria.

D.  A permanent injunction barring Bourgeois from continuing to operate LEDC's administration of SSBCI funds with racial eligibility criteria.

E.  Money damages from the Tulane Defendants in an amount to be determined at trial.

15

F.  Money damages from the Louisiana Economic Development Corporation in an amount to be determined at trial.

G.  Reasonable costs and expenses of this action, including attorneys' fees under 42 U.S.C. § 1988 and any other applicable laws, against all Defendants.

C. All other legal and equitable relief as the Court deems just and proper.

DATED: July 2, 2026

Respectfully submitted,

/s/ F. Evans Schmidt

Edward D. Greim*
Sarah R. Pineau*
GRAVES GARRETT GREIM LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com
spineau@gravestgarrett.com

F. Evans Schmidt, La. Bar #21863
KOCH & SCHMIDT LLC
650 Poydras Street
Suite 2660
New Orleans, LA 70130
(504) 208-9040
feschmidt@kochschmidt.com

*Attorneys for Plaintiffs*

16

*Motion for admission *pro hac vice* forthcoming

17